FILED
United States Court of Appeals
Tenth Circuit

January 6, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KELLY BRYANT; HOLLIE BRYANT,

　　　　Plaintiffs - Appellants,

v.

SAGAMORE INSURANCE
COMPANY,

　　　　Defendant - Appellee.

No. 14-7039
(D.C. No. 6:13-CV-00240-RAW)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **GORSUCH**, and **MORITZ**, Circuit Judges.

　　　　Plaintiffs Kelly Bryant and Hollie Bryant appeal the district court's grant of

summary judgment in favor of Sagamore Insurance Company (Sagamore) on their

breach of contract and bad faith claims. Exercising jurisdiction under 28 U.S.C.

§ 1291, we affirm.

---

[*]　　　　After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

The parties are familiar with the facts as fully outlined in the district court's orders. We restate them briefly here only as they are relevant to our decision.

Kelly Bryant ("Kelly") insured his automobiles with Sagamore under a policy containing a named-driver exclusion (NDE) specifically excluding coverage for his minor daughter, Hollie Bryant ("Hollie"). Hollie was involved in an accident while driving one of Kelly's insured vehicles . The following day, Kelly contacted Sagamore through his insurance broker. Sagamore sent Kelly a reservation-of-rights letter and attempted numerous times to contact him. When Kelly failed to respond, Sagamore sent him a second reservation-of-rights letter noting his failure to respond, requesting he contact Sagamore immediately, and warning him Sagamore could decline coverage under the terms of the policy based on his failure to cooperate in their investigation.

When Kelly again failed to respond, Sagamore sent a third letter, noting his continued failure to cooperate and requesting he and Hollie appear for an examination under oath. After Kelly and Hollie (collectively, "the Bryants") failed to appear for their scheduled examinations, Sagamore declined coverage, citing both the NDE and Kelly's failure to cooperate in investigation of the claim.

Sometime thereafter, Cuba Lawrence, the driver of the vehicle involved in the accident with Hollie, filed an action in state court and obtained a default judgment

against Hollie for $694,726.23. Kelly neither notified Sagamore of Lawrence's lawsuit nor requested Sagamore defend Hollie.

As it turned out, Hollie was insured under a policy issued to her stepfather, and that insurer paid Lawrence's property damage claim and the bodily injury policy limits of $100,000. In exchange, Lawrence released Hollie from all liability including the default judgment. Despite this release, it is undisputed the Bryants never sought to vacate or release the default judgment against Hollie.

Lawrence eventually sought coverage from Sagamore which responded that it had already declined coverage based on the NDE provision and Kelly's non-cooperation. The Bryants then filed this breach of contract and bad faith action against Sagamore, asserting Sagamore lacked any reasonable basis to deny the claim. While this action was pending, Sagamore paid Lawrence its full, $50,000 bodily injury limit in exchange for Lawrence's release of all claims against Kelly and Hollie.

Both parties moved for summary judgment. Relying on *Mulford v. Neal*, 264 P.3d 1173, 1182-83 (Okla. 2011) (per curiam), the Bryants argued Sagamore knew when it denied coverage that NDE provisions excluding minors from coverage in their parents' policies violated state public policy and were unenforceable, at least when both parents' policies excluded the minor.

But Sagamore argued *Mulford* was factually inapplicable because Hollie was not excluded under both parents' policies, as in *Mulford*. Further, Sagamore pointed

out that while the Oklahoma Supreme Court issued *Mulford* prior to Sagamore's issuance of insurance policies to Kelly, *Mulford* was not published until after Sagamore denied coverage. *See Porter v. Okla. Farm Bureau Mut. Ins. Co.*, 330 P.3d 511, 518 (Okla. 2014) (holding insurer did not act in bad faith by refusing to follow court opinion before it was ordered published; unpublished opinion lacks precedential effect unless and until it is released for publication). Sagamore also argued it denied coverage for the additional and independent reason that Kelly failed to cooperate with its investigation, as required by the policy.

In two separate orders, the district court granted Sagamore's motion for summary judgment and denied the Bryants' motion. It concluded Sagamore did not breach the contract or act in bad faith in denying the Bryants' claim because *Mulford* lacked precedential effect at the time Sagamore denied coverage and because Sagamore alternatively and reasonably denied the claim based on Kelly's failure to cooperate with its investigation.

The Bryants appeal the district court's grant of summary judgment to Sagamore, but they have not appealed the district court's denial of their own summary judgment motion.

**DISCUSSION**

In this diversity action, our review is de novo and we apply the same standard as the district court. *Fowler v. United States*, 647 F.3d 1232, 1237 (10th Cir. 2011). Summary judgment is proper when the moving party shows "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). In deciding whether the moving party is entitled to judgment as a matter of law, we view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party. *Fowler*, 647 F.3d at 1237.

To prove a claim for breach of contract under Oklahoma law, the Bryants must prove "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001). Under Oklahoma law, insurance contracts are interpreted "in accordance with principles applicable to all contracts." *Mansur v. PFL Life Ins. Co.*, 589 F.3d 1315, 1319 (10th Cir. 2009). They are "construed according to the plain meaning of its language," and, if unambiguous, the court "interprets the contract as a matter of law." *Id.*

To prove a bad faith claim under Oklahoma law, the Bryants must prove: 1) they were entitled to coverage under the policy; 2) Sagamore had no reasonable basis to deny coverage or delay payment; 3) Sagamore violated its duty of good faith and fair dealing; and 4) the violation directly caused injury. *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009). The party claiming bad faith has the "burden of

- 5 -

proof," and must make a "clear showing that the insurer [acted] unreasonably and in bad faith." *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 913 (Okla. 1982).

On appeal, the Bryants first contend Sagamore's payment of the policy limit to Lawrence constituted a confession of judgment or admission of liability by Sagamore, precluding summary judgment on either claim. But this argument ignores the fact that Sagamore resolved Lawrence's claim while disputing liability at all times and with explicit acknowledgment from Lawrence that the settlement was in compromise of a "doubtful and disputed claim."

Further, the extra-jurisdictional cases the Bryants cite lack precedential value and are readily distinguishable. Nor does the single Oklahoma case they cite support their proposition. See *Ass'n of Cnty. Comm'rs of Okla. v. Nat'l Am. Ins. Co.*, 116 P.3d 206 (Okla. Civ. App. 2005). Instead, the court there simply noted the district court's reliance on a Florida decision holding that a negotiated settlement does not bar the statutory obligation to pay prevailing party attorney fees. *Id*. at 116 P.3d 206, 208 n.5 (noting lower court's citation to *Wollard v. Lloyd's and Companies of Lloyd's*, 439 So.2d 217, 218 (Fla. 1983)). Thus, we reject this argument as a matter of law. *See Reeder v. Am. Econ. Ins. Co.*, 88 F.3d 892, 894 (10th Cir. 1996) (holding an offer of payment by insurer is inadmissible under Fed. R. Evid. 408, which prohibits introduction of evidence concerning settlement efforts).

The Bryants next assert several arguments related to whether Sagamore breached the contract or acted in bad faith in declining coverage on the basis of the

NDE provision. But we need not address any of these arguments because we conclude the district court properly granted summary judgment to Sagamore based on an independent and sufficient ground – *i.e.*, Kelly's failure to cooperate with Sagamore as required by the policy terms.

"An insured . . . has an obligation to cooperate with the insurer, which is both contractual and implied in law." *First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*, 928 P.2d 298, 304 (Okla. 1996) (footnotes omitted). Kelly's policy with Sagamore contained an express cooperation provision:

> A person claiming any coverage under this policy must also:
>
> (1) cooperate with us and assist us in any matter concerning a claim or suit, including presence at a trial.
> (2) send us promptly any legal papers received relating to any claim or suit.
> * * *
> (6) submit to an examination under oath as often as may be reasonably required.
> (7) upon our request, allow us to obtain a written or recorded statement concerning the circumstances of the claim and any damages claimed.
>
> We shall not be liable for damages or costs assessed as a result of or due to an insured person's failure to cooperate with us under the terms of this policy, or for an insured person's failure to appear at trial, in court hearings, or at other court-ordered conferences when the insured person's attendance is necessary for defending the interests of you, the insured person, or us.

Aplt. App. at 461.

The Bryants generally argue the district court erred in granting Sagamore summary judgment on this claim because they established "legitimate," "triable"

questions of fact as to whether they[1] cooperated. Aplt. Br. at 24. But to withstand summary judgment, they must show that there is "no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "mere existence of *some* alleged factual dispute between the parties" is not enough. *Id.* at 247.

The Bryants specifically dispute Sagamore's evidence that Kelly failed to respond to its inquiries before July 15. They argue a reasonable juror could find Kelly cooperated based on his testimony that he returned Sagamore's calls on July 8 and July 15. But as the district court recognized, it is immaterial whether Kelly initially cooperated with Sagamore because it is undisputed that after July 15 he ended any cooperation by failing to contact Sagamore, failing to respond to any of Sagamore's continued requests for information, and failing to appear at his scheduled examination.

Further, the Bryants contend the district court erred in granting summary judgment based on Kelly's failure to cooperate because Sagamore failed to diligently attempt to contact Kelly. The undisputed facts establish otherwise. The record shows that after July 15, Sagamore (1) telephoned Kelly and left a voice message on July 20; (2) sent Kelly a second reservation-of-rights letter on August 23 noting his continued failure to respond to their inquiries, explaining that the policy required his

---

[1]     The Bryants argue the district court failed to consider whether Hollie cooperated, asserting Sagamore made only one, unsuccessful, attempt to contact her. But this is immaterial because Sagamore declined coverage based on the failure of *Kelly* to cooperate, not Hollie. Aplt. App. at 399.

cooperation, quoting in full the policy's language requiring cooperation, and asking Kelly to contact Sagamore immediately upon receipt of the letter; (3) sent an adjustor to Kelly's home on September 6, who left a card asking Kelly to contact her; and (4) sent correspondence to Kelly by Federal Express on September 21 again noting his continued failure to respond to Sagamore's inquiries, requesting he and Hollie appear for an examination under oath on September 30, and warning that Sagamore could decline coverage if Kelly or his daughter failed to appear for the scheduled examination under oath and failed to cooperate.

We conclude the material, undisputed facts establish that Sagamore demonstrated it diligently attempted to contact Kelly.

Kelly points out that he testified he did not "recall" seeing Sagamore's correspondence sent via Federal Express on September 21. Notably, as the district court pointed out, Kelly's failure to recall receiving correspondence was insufficient to create a question of fact as to whether it was sent. But even if it created a fact question on that issue, Kelly admits he received Sagamore's August 23 correspondence directing him to contact Sagamore and that he failed to do so. Thus, Kelly' inability to recall receiving another letter to the same effect did not create a genuine dispute of material fact.

The Bryants also argue Kelly had no duty to cooperate after Sagamore advised him sometime prior to July 15 that his daughter was not covered under the policy. In support, the Bryants point to *State ex rel. Crawford v. Indemnity Underwriters Ins.*

- 9 -

*Co.*, 943 P.2d 1099, 1101 (Okla. Civ. App. 1997). There, Oklahoma's intermediate appellate court held "the duty to cooperate does not come into play if there is no coverage for the claim." But *Crawford* did not concern the insured's cooperation during the insurer's investigation; rather, it concerned the insured's failure to provide the insurer with timely notice of a claim. *Id*. at 1100.

Moreover, the Oklahoma Supreme Court has held that even after an insurer denies a claim, an insured's failure to cooperate may defeat an insurer's obligations to perform under the policy. *First Bank*, 928 P.2d at 305, *see id*. at 304 n.21 (noting generally "that an insured's duty to cooperate does not end with the termination of the underlying lawsuit, but rather continues for as long as the insured seeks to enforce its terms" (citing *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co*., 579 N.E.2d 322, 328 (Ill. 1991)).

Here, Kelly's policy obligated him to cooperate in accordance with its terms while "claiming any coverage." Aplt. App. at 461. Significantly, the record contains no evidence indicating Kelly ever withdrew his request for coverage. But the record does indisputably demonstrate, in letters dated July, 11, August 23, and September 21, that Sagamore repeatedly reiterated its effort to investigate Kelly's claim and its request that he contact Sagamore immediately. Thus, Kelly's testimony that he believed he no longer had a duty to cooperate did not create a material issue of fact.

- 10 -

The Bryants alternatively suggest that even if Kelly breached his duty to cooperate, the district court erred in granting Sagamore summary judgment because Sagamore failed to demonstrate any prejudice from the breach. We disagree. It is undisputed that because of Kelly's non-cooperation, Sagamore did not know whether Kelly gave Hollie permission to drive the insured vehicle. Because Kelly's policy excluded coverage for non-permissive use, Sagamore demonstrated that it was prejudiced, at a minimum, by its inability to investigate this issue.

In sum, the undisputed evidence demonstrates Kelly's policy required him to cooperate with Sagamore's investigation and he failed to do so; thus, Sagamore did not breach the contract by denying coverage on this basis and the district court properly granted summary judgment to Sagamore on the Bryants' breach of contract claim.

Further, the Bryants did not meet their burden to clearly show Sagamore acted unreasonably and in bad faith in denying Kelly's claim on the basis of his noncooperation. *See Ball*, 221 P.3d at 725 (holding critical issue in a bad faith tort claim "is whether the insurer had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding or delaying payment under the policy") (internal quotation marks and bracket omitted)). Accordingly, the district court did not err in granting summary judgment to Sagamore on the Bryants' bad faith claim.

Finally, the Bryants argue the district court erred in denying their motion under Fed. R. Civ. P. 37(a) to compel production of documents relating to claims handling and coverage advice from Sagamore's in-house counsel, Susan Kohler. In the district court, Sagamore responded that it relied only on the advice of its outside counsel, Lynn Babb, and thus it waived attorney-client privilege only as to Babb's advice. The district court reviewed the requested materials in camera and denied the motion, ruling Sagamore had not waived its attorney-client privilege as to Kohler.

The record demonstrates that two months before both parties filed summary judgment motions, Sagamore's counsel sent a letter to the Bryants' counsel confirming Sagamore's agreement to waive its attorney-client privilege as to Babb, but reserving the privilege as to any attorney communications unrelated to Babb's communication. The letter also confirmed the Bryants' agreement that they would not contend that because Sagamore produced communications with Babb, it waived attorney-client privilege as to other attorney communications. Aplee. Supp. App. at 294.

Notably, the Bryants' counsel did not dispute the terms of this agreement; instead, the Bryants filed their Rule 37(a) motion to compel only *after* filing their summary judgment motion. By proceeding in this manner, the Bryants not only failed to demonstrate Sagamore waived its attorney-client privilege as to Kohler, they also failed to comply with Fed. R. Civ. P. 56(d), which requires a plaintiff to file a specific affidavit if additional discovery is needed to respond to a summary judgment

motion. Consequently, we hold the district court did not abuse its discretion in denying the motion to compel. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1112 (10th Cir. 2001).

Sagamore's motion to file a supplemental brief is denied as moot. The judgment of the district court is affirmed.

Entered for the Court

Nancy L. Moritz
Circuit Judge
